**William H. LOEHDE and Jessie Carolyn Loehde, his wife, Plaintiffs-Appellants,**

v.

**WISCONSIN RIVER POWER COMPANY, a Wisconsin corporation, and Walter Buchanan, Defendants-Appellees.**

**No. 12761.**

United States Court of Appeals Seventh Circuit.

April 20, 1960.

Walter F. Boye, Benton Atwood, John W. Hill, Roy W. Hill, Chicago, Ill., for appellants.

Theodore W. Brazeau, Richard S. Brazeau, Wisconsin Rapids, Wis., for appellees.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This diversity action was brought in the District Court by plaintiffs-appellants, William H. Loehde and Jessie Carolyn Loehde, husband and wife, to recover possession of real estate and for damages in the sum of $100,000.00. De-

fendants-appellees are Wisconsin River Power Company (hereinafter referred to as defendant) and Walter Buchanan, its lessee. Plaintiffs allege that defendant in connection with the construction of its Petenwell dam across the Wisconsin River unlawfully entered upon a forty acre tract of land owned by plaintiffs, excavated and removed approximately 400,000 cubic yards of soil and without right leased the premises to Buchanan for a term of twenty-five years. Defendant's answer, *inter alia,* admits the entry, excavation and leasing, but denies that plaintiffs were at the times mentioned the owners of and rightfully possessed of the property. Defendant alleges that on April 10, 1948 plaintiffs conveyed the tract to defendant with intention of giving defendant title thereto but placed the deed in escrow until the consideration was paid; that the consideration was a conveyance to plaintiffs of forty acres of defendant's property to be selected by plaintiffs; and that plaintiffs have failed and neglected to make such selection although defendant is still ready, willing and able to make such conveyance. Entry without consent of plaintiffs is denied and defendant alleges that pending selection by plaintiffs of the acreage to be conveyed them and its conveyance by defendant, the latter was to use said property as its needs required. Dismissal of plaintiffs' complaint on the merits was prayed. The court allowed a motion of defendant to amend the prayer of its answer to request that the court find the reasonable market value of the tract involved, and that plaintiffs be required to deliver a warranty deed upon payment of such amount. No formal amendment was filed.

The case was tried without a jury. It was stipulated that defendant does not have the right to exercise the power of eminent domain; that prior to April 10, 1948 the tract involved was in the ownership of plaintiffs; and that approximately 320,000 cubic yards were excavated therefrom by defendant.

The findings of fact made by the court included findings that Jessie Carolyn Loehde is a nominal party plaintiff; that prior to April 10, 1948, William H. Loehde was owner of the tract, all but thirty acres of which was under water; that prior to April 10, 1948 defendant contracted to purchase the lot from plaintiffs, the consideration to be a parcel of equal value owned by the defendant and located on the pond or lake created by backwaters of the dam; that the contract was evidenced in writing by correspondence; that about 300,000 cubic yards were excavated and the excavation was with consent of plaintiffs given prior to April 10, 1948; that prior to said date defendant was, in fact, the owner of said lands so contracted to be conveyed to it and entitled to a deed of same in fee simple subject only to paying plaintiffs the purchase price by such exchange of property or the cash market value of the tract, which was $760.00; and that after April 10, 1948 plaintiffs had no further claim or title to said lands and same were fully vested in defendant subject only to the payment to plaintiffs of $760.00, the fair market value of the tract prior to the excavation therefrom. The Court concluded and entered judgment that defendant is and was from April 10, 1948 the owner in fee simple of the tract, free and clear of all claim, right or demand of plaintiffs and that plaintiff William H. Loehde is entitled to have and recover of defendant $760.00, with costs.

Plaintiffs appealed. The main contested issues are (1) whether the District Court's finding and conclusion of ownership in defendant is supported by the evidence, (2) whether the Court erred in excluding evidence as to the value of the soil or sand excavated and removed from the tract, and (3) whether the Court erred in limiting the recovery to plaintiff William H. Loehde to the exclusion of Jessie Carolyn Loehde.

The record establishes that ownership of the tract was in both William H. Loehde and Jessie Carolyn Loehde. The land was near Necedah, Adams County, Wisconsin, adjacent to, and about 500 feet below, the Petenwell dam erected by defendant. The sand excavated was used

in construction work incident to the erection of the dam.

We have carefully reviewed the record and considered the correspondence relied upon as constituting a contract upon the part of plaintiffs to convey the tract they owned in exchange for forty acres of defendant's property to be selected by plaintiffs. C. C. Fuller, a Necedah banker, who as an officer and agent of defendant was acting for it in the acquisition of land in connection with the construction of the dam, wrote William H. Loehde under date of March 12, 1948 advising that:

"The reason I am writing is at the request of Mr. Thiele who at the present moment is down at Sandersville, Georgia, and they seem quite anxious to go in and do some preliminary work on some of the river bottom land and he asks if you would be good enough to deposit your deed to your land with the abstract with us, with the understanding that the company will convey forty acres on the lake shore making their reservation for what they need for the operation and maintenance of their dam and electric power. They would convey at any time when we have definitely decided what is wanted or be willing to wait until water is stabilized and until you make a selection of a parcel of land with equal acreage. They would then convey to whomever you direct.

"I am writing this in the absence of Mr. Thiele, inquiring whether you would be willing to give them your deed upon their written agreement to make conveyance and you could prepare the deed direct to the Wisconsin River Power Company or I could have it prepared here and submit the abstract for examination and have them prepare the agreement or you could prepare the agreement in such manner and form as you think best. I do not have the correspondence before me that has passed between us on this subject but it is someplace in my files but

not so-placed that we are able to locate it and it may have to wait until I return to the office.

"I have in mind at this particular moment a conveyance to either the West one-half of the Northwest or the East one-half of the Northwest of Section 16, Township 19, Range 4, either of which would contain a trifle over forty acres of up-land after the South part of either of the parcels was flooded and their reservations were made.

"Will you let me know what you think of the foregoing at once?"

Loehde answered under date of March 13, 1948:

"Before Mr. Thiele left for Sandersville, Georgia, he tried to reach me during my sojourn in Colorado. Was lucky to speak to him over long distance phone shortly before he departed. The sum total of the conversation was as follows:

'Mr. C. C. Fuller of Necedah, Wisconsin, is in complete charge of the program. Should an emergency arise relative to use, the company is at liberty to act on necessary construction work and we will agree on settlement later.'

"This met with his approval and he expressed a desire to join you and I in a joint cooperative program with reference thereto, with a conveyance to the three of us of a property that the company had no use for and which we could adjust between us and which would have speculative value and would be fair value today for the forty acres they need on the river below the power dam at Necedah.

"Now, Mr. Fuller how would it be if you postponed the program until Mr. Thiele returns and the three of us can get together.

"To expedite matters please have a deed prepared to the company and mailed to me which I shall sign and deliver to you together with the ab-

stract all to the end that you can hold the same in escrow until we get together and agree on a deal, next 90 days.

"Mr. Thiele expressed some concern about emergency matters of minor importance relative to the forty acres in respect to which I assured him he could move and you would be in charge and protect my interest. This met with his approval.

"Now Mr. Fuller, I am writing you this lengthy letter with the expressed purpose of keeping you in touch with what developed since we last met at Necedah. It appears that the company has a definite purpose for the Loehde forty acres and my purpose is to cooperate through you to the end that you acquire the same for the company at fair value. I wonder if fishing rights and any use not interfering with the company's operations in the dam deal could be reserved by me in the proposed deal as I have a desire to capitalize the advantages of the drop in water level and non corporate use of the property.

"I wish to congratulate you on your recovery and hope that you will capitalize the same by taking care of yourself."

It is evident from Loehde's letter that his understanding of his conversation with Thiele, defendant's president, was that Thiele, Fuller and he were to be the grantees in a conveyance from the defendant of land having "speculative value" but of "fair value today" for plaintiffs' property. He does not accept the proposal tendered by Fuller's letter but requests that the matter be postponed until Thiele's return "and the three of us can get together". He does suggest that to expedite matters that a deed be prepared to the Company to be held in escrow "until we can get together and agree on a deal, next 90 days". He inquires if "fishing rights and any use not interfering with the company's operations" could be reserved in the deed of plaintiffs' land to the defendant. Fuller, who was confined to his home following illness, replied through the cashier of the bank of which Fuller was President, under date of March 17, 1948, that a deed to the defendant was being prepared and requested that the abstract to the property be forwarded. On March 19, 1948 Loehde forwarded the abstract and under date of April 1, 1948 the bank cashier forwarded to Loehde an unsigned warranty deed dated April 2, 1948 naming William H. Loehde and Jessie Carolyn Loehde, his wife, as grantors and Wisconsin River Power Company, as grantee, and conveying the Loehde property without reservation, exception or condition. The letter of transmittal advised:

"Mr. Fuller asked me to send the enclosed deed to you for execution. The abstract has been continued to date and is now being examined. Mr. Fuller asks that you return the deed to this bank and he will work out some deal along the lines that you wrote him, that will be mutually satisfactory."

Plaintiffs did not execute or return this deed, but on April 12, 1948 William H. Loehde forwarded to the bank cashier a deed executed by plaintiffs and dated April 10, 1948 to be held in escrow, stating that "The consideration therefore shall be arranged between the Company and me within the next ninety days upon Mr. Fuller's recovery". The April 10, 1948 deed was drafted by Loehde and was described by him at the trial as a "seepage deed". It contained exceptions and conditions which caused defendant's title examiner to return it to the bank cashier with the following comment:

"We are returning herewith the deed to Wisconsin River Power Company executed by William H. Loehde and wife covering Government Lot 1, Section 10, Township 18 North, Range 4 East. This deed is so complex and obscure that we are unable to get at the meaning of the same.

"Our people understood that they were to get a deed of the premises,

660

and we are enclosing herewith a deed which we would like to have executed. If he wants to buy the property back later some time or take it back after we are through with it then we can make some arrangement to that effect. Our people tell us that the property will be worthless when they have used it for filling and a sand pit.

"We would not like to take the deed as it is worded as we see no necessity for such complication. You may have to hold it until Mr. Fuller is well enough to take the matter up with Mr. Loehde."

Subsequent to April 10, 1948 defendant entered upon the property and excavated and removed the sand. On September 28, 1948 defendant leased all fur rights and rights of trapping on the tract, and other lands, to Walter Buchanan for a twenty-five year period. Fuller again wrote Loehde October 11, 1948 forwarding another warranty deed and requesting its execution; the deed "to be held until further development". Again on October 19, 1948 Fuller wrote Loehde about execution of the deed inquiring if he "would be more interested in a cash settlement" and the amount of such cash consideration.

It is apparent that the correspondence above detailed did not establish a contract on the part of plaintiffs to convey the tract they owned to defendant. We reach this conclusion apart from any consideration of the question of William H. Loehde's authority to act for or to bind his wife, a co-owner of the property, or whether he purported to do so. Nor did the escrow deposit of the April 10, 1948 deed executed by plaintiffs effect a conveyance of title to defendant. The consideration therefore was never "arranged", or agreed upon; the transaction never consummated. In addition the defendant affirmatively rejected acceptance of a conveyance on the terms and conditions contained in that deed. Although Loehde's correspondence indicated a willingness to deal, no deal was ever agreed upon or concluded.

We find no support in the present record for the findings, conclusion and judgment of the District Court vesting title to the property in defendant. The case must be reversed and remanded for a new trial. We therefore do not consider defendant's contention that this Court would have authority to correct the second paragraph of the judgment by amending it to award the $760.00 to both plaintiffs instead of to William H. Loehde alone. In view of the disposition we make of the appeal we do not deem it necessary that we consider other issues raised by plaintiffs' contentions. We do direct that the District Court permit such amendments to the pleadings as will serve to properly reform the issues and that it permit plaintiffs to introduce evidence as to the value of the sand excavated.

Reversed and remanded for a new trial, with directions.